**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Plaintiff,

v.                                                              CV 09-0309 MV/WPL

FISHER SAND & GRAVEL CO.,

      Defendant.

**ORDER**

The Equal Employment Opportunity Commission (EEOC) brought this action for sexual harassment and retaliation against Fisher Sand & Gravel Co. (Doc. 1.) The complaint alleges that the charging party and at least one other female employee of Fisher were subjected to a hostile work environment at Fisher's Mora, New Mexico work site. The EEOC seeks relief, including punitive damages, on behalf of the charging party and a class of females. (*Id.*)

The matter is before me now on the EEOC's motion to compel Fisher to respond to certain discovery requests. For the reasons that follow, I will grant the motion in part.

*Information Regarding Fisher's Financial Condition*

The EEOC's second request for production sought "[a]ll documents, including but not limited to, income tax returns, financial statements, profit & loss statements, or other documents which discuss or describe the financial condition and income of Fisher Sand & Gravel Co., for the years 2007, 2008 and 2009." The EEOC's third interrogatory asked Fisher to "[s]tate the total gross revenues earned by Fisher Sand & Gravel Co., for the years 2007, 2008 and 2009." The EEOC

contends that information regarding Fisher's financial condition is relevant to its punitive damages claim. Fisher raises a number of objections to these discovery requests.

First, Fisher argues that its financial condition is irrelevant to a punitive damages analysis. This argument is based primarily on Fisher's misreading of the Supreme Court's decision in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003). In *Campbell*, the Court stated that "courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." 538 U.S. at 426. Because this statement does not mention the defendant's financial condition, Fisher concludes that punitive damages must be based only on the factors mentioned in *Campbell* and that the defendant's financial condition is irrelevant.

Fisher fails to cite the portion of the Court's decision that actually addresses the role that a defendant's financial condition plays in the punitive damages analysis. There, the Court stated, "The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award." *Id.* at 427. In support of this statement, the Court relied on the following quotation from Justice Breyer's concurrence in an earlier punitive damages case: "[Wealth] provides an open-ended basis for inflating awards when the defendant is wealthy . . . . That does not make its use unlawful or inappropriate; it simply means that this factor cannot make up for the failure of other factors, such as 'reprehensibility,' to constrain significantly an award that purports to punish a defendant's conduct." *Id.* at 427-28 (quoting *BMW of N. Am. v. Gore*, 517 U.S. 559, 591 (1996) (Breyer, J., concurring)). Thus, although a defendant's wealth alone does not warrant a large punitive damages award, consideration of a defendant's wealth is not inappropriate. *See White v. Ford Motor Co.*, 500 F.3d 963, 976 n.10 (9th Cir. 2007) ("As is clear from *State Farm* [*v. Campbell*] itself, the jury's use of wealth in imposing punitive damages is both lawful and appropriate.").

In a case decided after *Gore* but before *Campbell*, the Tenth Circuit rejected the argument that a defendant's financial condition is irrelevant in determining the amount of punitive damages. Reviewing the Supreme Court's statements in *Gore*, the Tenth Circuit concluded "that a large punitive award against a large corporate defendant may not be upheld on the basis that it is only one percent of its net worth or a week's corporate profits. Yet wealth must remain relevant, because $50,000 may be awesome punishment for an impecunious individual defendant but wholly insufficient to influence the behavior of a prosperous corporation." *Cont'l Trend Res. v. OXY USA*, 101 F.3d 634, 641 (10th Cir. 1996). There is nothing in *Campbell* to suggest that the Tenth Circuit's interpretation of *Gore* was wrong. Accordingly, under binding Tenth Circuit authority, Fisher's financial condition is relevant to the determination of punitive damages.

Fisher also contends that its financial condition is irrelevant because it has a valid defense to punitive damages under *Kolstad v. American Dental Association*, 527 U.S. 526 (1999). It would be improper to prejudge now, during the discovery phase, whether the EEOC will be able to prevail on its claim for punitive damages at trial or whether instead Fisher will prevail on its defense. The EEOC is not required to establish a prima facie case on punitive damages before being entitled to discovery on the issue. *See EEOC v. Envtl. & Demolition Servs.*, 246 F.R.D. 247, 249 (D. Md. 2007) ("[A] majority of courts hold that pretrial discovery of financial statements relevant to a punitive damages claim is generally permissible without any prima facie showing of entitlement to such damages."); *see also EEOC v. AutoZone Inc.*, 631 F. Supp. 2d 1076, 1079 (C.D. Ill. 2009) (rejecting argument that evidence of defendant's net worth was irrelevant because defendant would be able to successfully defend the punitive damages claim at trial).

Fisher asserts that if its financial condition is relevant, the proper measure of its wealth should be based solely on its New Mexico operations rather than its total worth from its nationwide

3

operations.  To support this assertion, Fisher again relies on *Campbell* and also *Gore*.  In *Gore*, the Court stated that a defendant's "status as an active participant in the national economy implicates the federal interest in preventing individual States from imposing undue burdens on interstate commerce."  517 U.S. at 585.  Although each state "has ample power to protect its own consumers, none may use the punitive damages deterrent as a means of imposing its regulatory policies on the entire Nation."  *Id.*  In *Campbell*, the Court held that a state generally does not have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside its jurisdiction.  538 U.S. at 421.

Fisher equates the Court's prohibition on one State punishing a defendant for its out-of-state conduct with using a defendant's national earnings as a basis for punitive damages.  *But see White*, 500 F.3d at 977 (rejecting argument that a defendant's net worth is relevant only insofar as it is derived from the defendant's wrongdoing because "[d]etermining what amount of punitive damages will 'sting' the defendant requires consideration of its *total* wealth, not merely wealth derived from wrongdoing").  Assuming it is proper to equate these two concepts in cases based on state law, the concepts have no application in a suit brought by the EEOC to vindicate the national interest in eliminating employment discrimination.  In *Gore* and *Campbell*, the Court constrained the states from imposing their regulatory policies on other states.  Neither *Gore* nor *Campbell* purported to constrain the federal government from imposing its regulatory policies on the states.  As Judge Parker has noted in a suit brought by the EEOC, "The Supreme Court's caution about basing the size of a punitive damages award on the wealth of a defendant appears to subside when it is the federal government that orders the damages instead of one of the states."  *EEOC v. Wal-Mart Stores, Inc.*, 11 F. Supp. 2d 1313, 1328-29  (D.N.M. 1998), *aff'd*, 1999 WL 1244485 (10th Cir. 1999).

Next, Fisher argues that if its financial condition is relevant, it should only be required to produce a statement of net worth. Fisher relies on a case in which Chief Magistrate Judge Garcia only required the defendant to provide a statement of its current net worth, although the plaintiff sought "information relating to 'total sales and revenue, total expenses, net income before income taxes, and net income of [the defendant] . . . .'" *DKD Elec. Co. v. Allied Tube & Conduit*, No. CV 97-1026 BB/LFG, Memorandum Opinion and Order at 1 (D.N.M. Aug. 5, 1998). In a later decision, however, Judge Garcia required a defendant to provide an annual report or current financial statements. *See Sandia Vista LLC v. Teresa I LLC et al.*, No. CV 05-1154 WJ/LFG, Order Granting in Part Plaintiff's Motion to Compel Discovery Responses at 6 (D.N.M. June 9, 2006).

The EEOC has asked Fisher to state its total gross revenues and to provide "[a]ll documents" that discuss its financial condition and income, "including but not limited to, income tax returns, financial statements, [and] profit & loss statements." I see no reason why the EEOC should have to accept Fisher's statement of its net worth. However, the EEOC's requests go too far in seeking all documents that discuss Fisher's financial condition and income. Fisher will be required to produce only its tax return and financial statements.

Finally, Fisher objects to providing financial information for the years 2007 to 2009, as requested by the EEOC, and argues that it should only have to provide information that shows its current net worth. In *DKD Electric*, Judge Garcia pointed out that evidence of past net worth is not relevant to a defendant's present ability to satisfy a punitive damages award. *See* Memorandum Opinion and Order at 2. I agree.

The EEOC maintains that it needs financial information for all three years because Fisher has raised a *Kolstad* defense based on its contention that it made a good faith effort to comply with employment discrimination laws. The EEOC argues that this defense raises the issue of whether

5

Fisher's efforts were adequate considering its financial resources. Since the allegations in the complaint date back to 2007, the EEOC asserts that it needs information about Fisher's financial condition going back to that year.

The only case cited by the EEOC in support of these arguments is *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). In *Ellerth*, the Court established an affirmative defense for an employer that is sued under a theory of vicarious liability for a hostile work environment created by a supervisor. 524 U.S. at 765. One element of the affirmative defense is that the employer exercised reasonable care to prevent and correct sexually harassing behavior. The Court held that proof that the employer promulgated an anti-harassment policy with complaint procedures "suitable to the employment circumstances" is relevant to this element. *Id.* *Ellerth* did not address the relevance of the employer's financial condition, nor did it involve punitive damages or the *Kolstad* good faith defense. To the extent that Fisher's financial condition might be relevant to determining whether its policies were sufficient, evidence of its current financial condition should be sufficient.

### *Information Regarding Identification of Employees*

The EEOC's first request for production sought "[d]ocuments or a list which contain the names, addresses, dates of employment, job titles, social security numbers and dates of birth of each employee employed at by [sic] Fisher Sand & Gravel in New Mexico during the period January 1, 2007 through June 2008." The EEOC's sixteenth request for production asked Fisher to produce personnel files and other documents for twelve identified female employees of Fisher.[1] The EEOC claims that this information will help it identify and locate potential witnesses to the alleged sexual

---

[1] One of the identified employees, Gayle Hampton, is a male, and the EEOC has withdrawn its request for his personnel file. (*See* Doc. 38 at 3 n.1.)

harassment and retaliation and identify other women who may have been subjected to unlawful conduct and who may therefore be class members.

Fisher argues that the request for identifying information for every person employed by Fisher in New Mexico is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Because the EEOC's claims for sexual harassment and retaliation are limited to the Mora, New Mexico work site, Fisher contends that employees who did not work at the Mora site could not be class members or witnesses. While this may be true, Fisher's argument ignores the fact that information about employees who worked at the Mora site is included in the EEOC's first request for production, and such individuals could be class members or witnesses.

Fisher's argument about producing information regarding its employees who did not work at the Mora job site bears more scrutiny. The EEOC cites two Tenth Circuit cases and a District of New Mexico case for the proposition that evidence of sexual harassment of persons other than the plaintiffs may be relevant and admissible. *See Nieto v. Kapoor*, 268 F.3d 1208, 1218-19 (10th Cir. 2001); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1416 (10th Cir. 1987); *EEOC v. Univ. of Phoenix*, No. CV 05-1048 JB/WPL, 2007 WL 1302578, at *4 (D.N.M. April 10, 2007) (unpublished). These cases, however, all involved allegations of improper conduct against other individuals who worked at the same location as the plaintiffs. Where sexually harassing acts of other individuals occurred at a location other than the plaintiff's office or work environment, absent a showing that the other acts impacted the plaintiff's work environment, evidence of those acts would be inadmissible for the purpose of proving that the plaintiff was subjected to a sexually harassing environment. *Land v. Midwest Office Tech., Inc.*, 125 F. Supp. 2d 433, 435 (D. Kan. 2000).

The EEOC is not, of course, seeking to admit acts of sexual harassment that occurred at other Fisher job locations, but is trying to discover whether such evidence exists. Evidence of sexual

harassment of individuals other than the plaintiff, at locations other than the plaintiff's work location, is admissible if the plaintiff can show that the other acts impacted her work environment. *Id.* It may also be admissible to show the employer's knowledge of the employee's acts, to show the employer's discriminatory intent under certain circumstances, to show "absence of mistake or accident" or knowledge under Rule 404(b), and to show habit under Rule 406. *Id.*; *see also* FED. R. EVID. 404(b), 406. The individual who allegedly harassed the charging party and named class member worked for Fisher at locations other than Mora. Given the broad scope of discovery allowed in Title VII cases, the EEOC's first request for production is not overly broad and could lead to the discovery of admissible evidence, and Fisher must fully respond to it. *See Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975) ("[I]n an EEOC case the discovery scope is extensive.").

Fisher raises additional arguments in opposition to the EEOC's request for personnel files. Fisher claims that during the EEOC's administrative investigation, it provided the EEOC with names, addresses, dates of employment, job titles, and social security numbers of employees who worked at the Mora site between January 1, 2007 and November 2007. Fisher also claims that the EEOC does not need the private and confidential information found in personnel files to contact these individuals. These arguments are unavailing. Fisher has failed to explain how the production of information during the EEOC investigative proceeding satisfies its responsibility under Rule 26(b)(1) to produce documents that will help the EEOC identify and locate potential witnesses and class members. Further, the EEOC has submitted an affidavit that states that it has not been able to locate ten of the women using the information provided by Fisher, and that the information contained in the personnel files may help locate these individuals. (Doc. 38 Ex. K.)

"District courts in this circuit have ruled that alleged private or confidential information must be disclosed in Title VII cases where the information is relevant to the claims brought." *EEOC v. Univ. of Phoenix*, 2007 WL 1302578, at *4. Any privacy needs can be addressed by a confidentiality order, which I am confident counsel can draft.

*Conclusion*

The EEOC's motion to compel is granted in part. Fisher must fully respond to the EEOC's first request for production. In response to the EEOC's second request for production, Fisher must provide its tax return and financial statements for 2009. Fisher need not answer the EEOC's third interrogatory. In response to the EEOC's sixteenth request for production, Fisher must provide the personnel files for the eleven identified female employees.

IT IS SO ORDERED.

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.