IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

       Plaintiff,                                      No. 1:09-cv-309 MV/WPL

       v.

FISHER SAND & GRAVEL CO.,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant Fisher Sand & Gravel Co.'s Motion for Summary Judgment, filed June 18, 2010.  (Doc. 82).  The Court, having reviewed the motion, the memoranda and exhibits submitted by the parties, relevant authorities, and being otherwise fully informed, concludes that the motion for summary judgment should be denied.

**I.**       **BACKGROUND**

The Equal Employment Opportunity Commission (EEOC) brought this action against Fisher Sand & Gravel Co. (Fisher) alleging sexual harassment and retaliation.  In 2007, Melony Encinias and Donna Romero both worked for Fisher as flaggers, controlling traffic in the construction zone at Fisher's job site in Mora, New Mexico.  Both allege that while employed by Fisher, they were sexual harassed by Fisher's Traffic Control Supervisor Erwill Hunt.  In its complaint (Doc. 1), the EEOC alleges that the charging party, Ms. Encinias, and at least one other female employee of Fisher, Ms. Romero, were subjected to sexual harassment by a supervisory official of Fisher, which created a hostile work environment for them because of their sex.  The complaint also alleges that Ms. Encinias was subject to retaliation because she

opposed the supervisor's unwelcome sexual conduct. The EEOC seeks relief on behalf of Ms. Encinias and a class of females.

By the instant motion, Fisher seeks: (1) summary judgment in its favor as to the hostile work environment claims on the basis of its *Faragher/Burlington* affirmative defense; (2) a ruling limiting the class to Melony Encinias and Donna Romero; (3) summary judgment in its favor as to the retaliation claims on the basis that all of the alleged retaliatory actions took place prior to the time Ms. Encinias is alleged to have engaged in any protected opposition to discrimination; and (4) summary judgment with regard to the EEOC's claim for front pay on behalf of Ms. Encinias on the basis that she was gainfully employed at a comparable rate shortly after her departure from Fisher and on the basis that her employment with Fisher was temporary.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on summary judgment, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." *Zurich N. Am. v. Matrix Serv., Inc.,* 426 F.3d 1281, 1287 (10th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## III.    FISHER'S *FARAGHER/BURLINGTON* AFFIRMATIVE DEFENSE

Fisher contends that even assuming that Ms. Encinias and Ms. Romero were subject to sexual harassment, neither of them reported the alleged harassment in any meaningful manner, thus robbing Fisher of the opportunity to address and correct any problems. Fisher contends that therefore it is entitled to summary judgment in its favor on its *Faragher/Burlington* affirmative defense.

In the companion cases of *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), the United States Supreme Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. However, when no tangible employment action has been taken against the employee, the employer may raise an affirmative defense protecting it from vicarious liability by showing: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. As an alternative to vicarious liability, a plaintiff may also establish liability by proving that the employer was negligent—in other words, "[t]he employer may be held liable if it knew, or should have known, about the hostile work environment and failed to respond in an appropriate manner." *Wright-Simmons v. City of Okla. City*, 155 F.3d 1264, 1270 (10th Cir. 1998).

The Court finds that summary judgment in Fisher's favor as to its *Faragher/Burlington* affirmative defense is inappropriate for at least the following reasons. First, there is a genuine issue of material fact as to whether Mr. Hunt (Ms. Encinias's supervisor and the alleged harasser) fired Ms. Encinias, which would constitute a tangible employment action rendering the defense inapplicable. *Faragher*, 524 U.S. at 808. Fisher claims that after working for a few hours on July 20, 2007, Ms. Encinias left the job site and never returned; it is thus Fisher's contention that Ms. Encinias quit. Fisher also notes that the EEOC's complaint (Doc. 1) alleges that Ms. Encinias was constructively discharged. However, in opposing summary judgment, the

3

EEOC submitted deposition testimony indicating that on July 20, 2007, after Mr. Hunt made hand gestures that she interpreted as a physical threat, Ms. Encinias borrowed a cell phone and called her landlord Judith Martinez to pick her up at the job site. (Doc. 90-2 (Encinias Depo.) at 152:6-155:11 & 156:3-21). Ms. Martinez (accompanied by her mother Nellie Valdez) came to pick up Ms. Encinias. (Doc. 90-3 (Martinez Depo.) at 113:16-114:25). Ms. Encinias testified that after Ms. Martinez arrived at the job site, Ms. Encinias told Supervisor Leyba that she wanted to leave because Mr. Hunt was bothering her. (Doc. 90-2 at 160:21-161:13). Ms. Martinez then drove Ms. Encinias to the yard to retrieve her car. (Doc. 90-3 at 118:1-119:7). At one point, when Ms. Encinias's vehicle was stopped, Mr. Hunt was parked closely along side her vehicle and began yelling at Ms. Encinias, asking where the "fuck" she was going. (Doc. 90-3 at 119:8-23 & 123:20-125:19). During this conversation, Ms. Encinias told Mr. Hunt that she would come back to work, but that the harassment had to stop. (Doc. 90-2 at 164:9-165:21). Ms. Encinias testified that in response, Mr. Hunt yelled and cursed at her and told her "[m]y boss knows everything . . . and I ain't doing shit wrong." (Doc. 90-2 at 164:9-165:21; *see also* Doc. 90-3 at 123:20-125:19). Ms. Encinias also testified that Mr. Hunt told her "[y]ou're fired. Don't come back." (Doc. 90-2 at 136:2 & 164:9-165:21). Ms. Martinez and Ms. Valdez likewise testified during their depositions that they heard Mr. Hunt tell Ms. Encinias that she was fired. (Doc. 90-3 at 123:20-125:19 & 128:9-129:7; Doc. 90-10 (Valdez Depo.) at 26:7-10, 28:2-8 & 29:18-24). The Court finds that this evidence is sufficient to create a genuine issue of material fact as to whether Ms. Encinias was subjected to a tangible employment action rendering the *Faragher/Burlington* affirmative defense inapplicable.

Second, there are genuine issues of material fact as to whether Fisher exercised reasonable care to prevent and correct promptly any sexually harassing behavior. In order to

demonstrate reasonable care as required under the first element of the *Faragher/Burlington* defense, it is not enough to establish the existence of an anti-harassment policy if such policy is not also disseminated and enforced. *See Faragher*, 524 U.S. at 808 (employer could not establish it exercised reasonable care where, among other things, it had failed to disseminate its policy against sexual harassment); *Agusty-Reyes v. Dep't of Ed. of P.R.*, 601 F.3d 45, 55 (1st Cir. 2010) ("An employer's failure to show that it had established and *disseminated* an anti-discrimination policy, complete with a *known* complaint procedure can prevent it from successfully claiming the *Faragher-Ellerth* defense." (internal quotations omitted; emphasis in original)); *EEOC v. AutoZone, Inc.*, No. CV 06-926-PHX-SMM, 2008 WL 4183389, at *5 (D. Ariz. Sept. 11, 2008) (failure to disseminate can render a policy, reasonable on its face, insufficient to support a *Faragher* defense).

      While there is evidence that Fisher had an employee handbook and policies dealing with discrimination and sexual harassment (Doc. 82-2; Doc. 82-3), the Court finds that there are genuine issue of material fact as to whether Fisher's policy was adequately disseminated (and thus the reasonableness of Fisher's care to prevent discrimination). For example, it is undisputed that neither Ms. Encinias nor Ms. Romero were provided a copy of the employee handbook. (Doc. 90 at p. 2, PSF 12 & 14; Doc. 90-2 at 99:22-23; Doc. 90-6 (Romero Depo.) at 59:23-60:1; Doc. 94 at p. 3). Likewise, while both Ms. Encinias and Ms. Romero were required to sign a memo titled "Contractors EEO Officer" that *inter alia* identified Todd Tavis as Fisher's Equal Employment Opportunity (EEO) Officer and provided his contact information and there is evidence that it was discussed at Monday safety meetings that Mr. Tavis was the EEO Officer (Doc. 82-4; Doc. 82-6 (Salazar Depo.) at 42:1-24), there is also evidence that Fisher did not provide employees with a copy of the signed memo, that neither Ms. Encinias nor Ms. Romero

were provided a copy of the memo or any education about it, that Ms. Romero did not have a telephone number for Fisher's EEO officer, and that Ms. Encinias did not know of the EEO officer.  (Doc. 90 at p. 2, PSF 8-11; Doc. 90-9 (Tavis Depo.) at 81:17-24; Doc. 90-7 (Salazar Depo.) at 27:1-28:14 & 78:4-79:12; Doc. 90-6 at 65:16-25; Doc. 82-5 (Romero Depo.) at 55:23-25 & 56:2-57:7; Doc. 90-2 at 182:24-183:8; Doc. 94 at p. 3).  Further, though there is evidence that Fisher's policy was posted on bulletin boards at Fisher job sites (Doc. 82-6 at 102:13-24; Doc. 82-7 (Sena Depo.) at 41:2-42:20; Doc. 82-8 (Vigil Depo.) at 42:1-23; Doc. 82-9 (Gallegos Depo.) at 22:3-23:5), there is also evidence that Ms. Romero and Ms. Encinias, who worked as flaggers out on the roadway, never saw postings at the Mora job site.  (Doc. 90 at p. 2, PSF 13 & 15; Doc. 90-1; Doc. 90-2 at 99:24-100:6; Doc. 90-6 at 99:2-100:1; Doc. 94 at p. 3).

Likewise, Fisher has also not established as a matter of law that it exercised reasonable care to correct promptly any sexually harassing behavior.  Shortly after her employment with Fisher ended, Ms. Encinias sent a letter to Fisher (Doc. 90-11) informing them that she had been sexually harassed by Mr. Hunt and that when she had reported this situation to Superintendent Gerald Salazar, Mr. Salazar did nothing to rectify the situation.  The letter further notified Fisher that Mr. Hunt fired Ms. Encinias for reporting him.  While Fisher submits evidence that upon receiving this letter, Fisher's EEO Officer Todd Tavis conducted an investigation by speaking telephonically to Mr. Hunt, Mr. Salazar, and Dave Olson (Fisher's area manager) and requesting a written statement from Mr. Hunt, Mr. Tavis did not speak to Ms. Encinias nor did he visit the Mora job site or interview other women who had worked with Mr. Hunt.  (Doc. 94-4 (Tavis Depo.) at 57:20-73:14; Doc. 90-9 at 74:12-15).  Further, there are questions concerning the adequacy of Mr. Tavis's efforts to reach Ms. Encinias.  While Mr. Tavis has testified that he made two attempts to reach Ms. Encinias by telephone and that between those two attempts,

Ms. Encinias tried to reach him once (Doc. 94-4 at 57:20-58:3, 60:21-61:3 & 71:24-73:14), Ms. Encinias testified that she received only the first telephone message from Mr. Tavis, which she returned immediately by leaving him a message, and that she never heard back from Mr. Tavis.  (Doc. 90-2 at 189:1-24).  There is also evidence that Mr. Tavis had knowledge that in an October 2007 unemployment hearing, Ms. Romero testified that she felt that she had been harassed while at Fisher, but that Mr. Tavis did nothing to investigate Ms. Romero's allegation.  (Doc. 82-19; Doc. 90-9 at 90:6-91:13 & 92:5-23).  Accordingly, the Court finds that a genuine issue of material fact exists as to whether Fisher exercised reasonable care to correct promptly any sexually harassing behavior.

Third, the Court finds that there are also genuine issues of material fact as to the second prong of the *Faragher/Burlington* defense, which requires Fisher to show that Ms. Encinias and Ms. Romero unreasonably failed to take advantage of any preventive or corrective opportunities provided by Fisher or to avoid harm otherwise.  For example, while it is undisputed that Ms. Encinias did not contact Todd Tavis prior to the termination of her employment at Fisher, there is evidence that she made multiple requests directly to Mr. Hunt, asking him to stop the harassing behavior.  (Doc. 90-2 at 67:11-68:21, 74:3-23, 89:2-91:15 & 111:2-18).  There is also evidence that when Ms. Encinias threatened to report Mr. Hunt's conduct, he told her that his "boss knows everything."  (Doc. 90-2 at 111:2-18).  Further, there is evidence that Ms. Encinias made multiple attempts to speak with Superintendent Salazar.  For example, she testified that following a crew meeting she told Mr. Salazar that she had something important to discuss with him, but he refused to meet with her at that time, stating he would get back to her later but that he did not get back to her.  (Doc. 90-2 at 93:24-94:8).  She also testified that she attempted to stop Mr. Salazar when he passed by her in his truck in order to speak with him regarding the

issue, however, he would not stop. (Doc. 90-2 at 92:1-23; *see also* Doc. 82-6 at 55:23-56:2). Further, Ms. Encinias testified that after work one day, Mr. Salazar met with the flaggers and told them about a female who had reported one of his men being dirty with her; Mr. Salazar allegedly referred to the female as a "bitch" and described how the men from the work site went to her house, kicked down the door, and beat her up—making Ms. Encinias hesitant to report the conduct to Mr. Salazar. (Doc. 90-2 at 95:2-23 & 112:7-113:7). Finally, Ms. Encinias testified at her deposition that on July 16, 2007, after almost being hit by two trucks (including one driven by Mr. Hunt), Ms. Encinias tried to call Superintendent Salazar to report the alleged harassment, but he did not answer. (Doc. 90-2 at 113:10-114:10 & 126:7-127:9). She testified that she left Mr. Salazar a voice mail saying that she needed to talk to him but did not specify why. (Doc. 90-2 at 126:7-127:9). When she did not hear from him that day, Ms. Encinias claims that she called again the following day and left another message stating that she was not going to work because something was happening at work and asked Mr. Salazar to please call her back. (Doc. 90-2 at 127:15-128:24). Ms. Encinias also tried calling Mr. Salazar multiple times on July 18, 2007. (Doc. 90-2 at 131:13-19 & 133:2-21). Finally, on July 19, 2007, Ms. Encinias was able to reach Mr. Salazar by phone, at which time she allegedly told him that Mr. Hunt had been sexually harassing her at work. (Doc. 90-2 at 136:10-138:24; Doc. 90-3 at 105:1-106:24 & 109:2-110:24). During the call, Ms. Encinias claims she told Mr. Salazar about Mr. Hunt's offensive sexual comments, told him about almost being hit by Mr. Hunt's truck, and told him that she was afraid for her physical safety and that he needed to investigate and put a stop to Mr. Hunt's behavior. (Doc. 90-2 at 136:10-138:24; *see also* Doc. 90-3 at 109:2-110:24; Doc. 82-12, Ex. 1). Though the call was brief, Ms. Encinias claims that she went back to work the following day hoping to meet with Mr. Salazar and resolve the situation with Mr. Hunt. (Doc.

90-2 at 136:10-137:20). Ms. Encinias, however, was unable to get Mr. Salazar to stop to talk with her on July 20th and she left part way though the day after Mr. Hunt made a punching hand gesture that Ms. Encinias understood to be a physical threat. (Doc. 90-2 at 149:22-150:4, 152:6-155:11, 156:3-21 & 163:11-20). There is thus evidence from which one could infer that Ms. Encinias did not unreasonably fail to take advantage of any preventive or corrective opportunities or to avoid harm otherwise.

As to Ms. Romero, there is evidence from which one could infer that she did not act unreasonably in failing to take advantage of possible preventive or corrective opportunities. For example, Ms. Romero, who was only 18 years old at the time she was employed by Fisher, avers that she was afraid to confront Mr. Hunt directly and instead attempted to avoid riding with him in the pilot truck. (Doc. 90-1; Doc. 90-6 at 8:13-16 & 45:1-47:22). She further explains that she did not have an opportunity to speak with Superintendent Salazar about Mr. Hunt's behavior because Mr. Salazar was either not around or was speeding by her in his truck. (Doc. 90-6 at 49:5-20). Ms. Romero also avers that she did not have the number for Mr. Tavis and was unaware that she could contact the New Mexico Department of Transportation. (Doc. 90-1; Doc. 90-6 at 55:23-25, 56:7-57:7 & 65:16-25). In light of the issues surrounding dissemination of Fisher's policy, and Ms. Romero's understanding that Ms. Encinias, who had also been harassed by Mr. Hunt, was no longer employed by Fisher (Doc. 90-6 at 44:3-23), the Court cannot say that as a matter of law, Ms. Romero acted unreasonably by failing to take advantage of possible preventive or corrective opportunities.

Accordingly, in light of the aforementioned genuine issue of material facts, the Court will deny Fisher's request that it be granted summary judgment in its favor as to the hostile work

environment claims on the basis of its *Faragher/Burlington* affirmative defense.[1]

## IV. THE CLASS CLAIMS

Without citation to any legal authority, Fisher seeks summary judgment on the EEOC's claim for relief on behalf of any class members not yet identified. Fisher argues that discovery is over and the EEOC has failed to identify females apart from Ms. Encinias and Ms. Romero who are class members. However, the EEOC has statutory authority to bring suit in its own name for the purpose of securing relief for a group of aggrieved individuals. *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 323-24 (1980) (The "EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals."). In bringing such a suit, the EEOC is not a mere proxy for victims of discrimination and EEOC enforcement actions are thus not considered representative actions. *Id.* at 326. Rather, "[w]hen the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." *Id.* Recognizing this, the Tenth Circuit has held that the EEOC may properly pursue relief when the charging party settles and the class is unnamed and unidentified. *EEOC v. United Parcel Serv.*, 860 F.2d 372 (10th Cir. 1988). Accordingly, this Court will deny Fisher's motion for summary judgment as to claims for relief on behalf of unidentified class members.

---

[1] Given that the Court has already identified multiple issues of material fact that preclude summary judgment in Fisher's favor as to the *Faragher/Burlington* affirmative defense, the Court need not address the EEOC's remaining arguments as to the applicability of the defense.

### IV.  PLAINTIFF'S RETALIATION CLAIM

Fisher contends Plaintiff cannot establish a *prima facie* claim for retaliation.  In order to establish a *prima facie* claim for retaliation, the EEOC must show that (1) Ms. Encinias engaged in protected opposition to discrimination, (2) she was subject to a subsequent action that a reasonable employee would have found to be materially adverse, and (3) a causal connection exists between her protected activity and the materially adverse action.  *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009).

Fisher argues that it is entitled to summary judgment as to Plaintiff's retaliation claim because there is no evidence of any adverse employment action subsequent to Ms. Encinias's protected opposition to discrimination, which Fisher contends began no earlier than July 19, 2007 when Ms. Encinias spoke to Mr. Salazar on the telephone regarding the sexual harassment she was experiencing.  In so arguing, however, Fisher discounts all of the occasions on which Ms. Encinias directly opposed Mr. Hunt's sexual harassment by telling him to stop engaging in the offensive conduct, contending that such action does not constitute protected opposition to discrimination as her complaints did not reference discrimination, harassment, or sex.

"Protected opposition can range from filing formal charges to voicing informal complaints to superiors."  *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004).  In order to qualify as protected opposition, an employee must convey his or her concern that the employer has engaged in a practice made unlawful by Title VII; however, no magic words are required.  *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008); *see also Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x 912, 916 (10th Cir. 2004) (unpolished) ("[A] vague reference to discrimination and harassment without any indication that this misconduct was motivated by race (or another category protected by Title VII) does not constitute protected

activity and will not support a retaliation claim.").

The EEOC has submitted evidence that Ms. Encinias made repeated requests that Mr. Hunt stop the offensive conduct that is alleged to constitute sexual harassment. For example, there is evidence that on the first day Ms. Encinias worked with Mr. Hunt, he spoke to her about a flagger who had sexual relations with Superintendent Salazar, himself and others. In response to Mr. Hunt's story, Ms. Encinias allegedly told him to "stop" and that she did not want to hear about it. (Doc. 90-2 at 67:11-68:21). When Mr. Hunt subsequently told Ms. Encinias that a girl would flirt so he could have sex with her, Ms. Encinias again warned him that "I told you I don't want to hear stuff like that." (Doc. 90-2 at 74:3-23). On other occasions, when Mr. Hunt was with Ms. Encinias in the pilot truck, he said former flaggers wanted to "suck his dick" and again Ms. Encinias responded by asking him to stop and to leave her alone, as she did not want to hear about it. (Doc. 90-2 at 89:2-91:15). Ms. Encinias further testified at her deposition that when she objected to Mr. Hunt's implicit suggestion that she "suck his dick," he responded by threatening to fire her. (Doc. 90-2 at 89:2-91:15). The Court finds that Ms. Encinias's deposition testimony that she repeatedly asked Mr. Hunt to stop his offensive conduct is sufficient to create a genuine issue of material fact. While Fisher objects that Ms. Encinias's testimony does not allege that she made any reference to discrimination, harassment, or sex, Fisher fails to place Ms. Encinias's requests in context. Ms. Encinias alleged requests that Mr. Hunt stop were made in direct response to comments Mr. Hunt made about sexual relationships and sexual acts. Placed in context, one could infer that Ms. Encinias had adequately conveyed her concern to Mr. Hunt that he was engaging in harassment based on her sex. *See, e.g., Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8th Cir. 2000) (finding that when plaintiff rejected her supervisor's advances and told him to stop his offensive behavior, she

engaged in the most basic form of protected activity); *but see LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 389 (5th Cir. 2007) (rejecting sexual advances does not constitute protected activity for purposes of a Title VII retaliation claim). Accordingly, the Court finds that there are genuine issue of material fact and will deny Fisher's request for summary judgment as to the EEOC's retaliation claim.

Finally, as previously noted, on September 19, 2007, Ms. Encinias briefly spoke to Superintendent Salazar over the phone regarding the alleged harassment by Mr. Hunt and she claims that the following day she was physically threatened and fired by Mr. Hunt. While Mr. Salazar testified that he did not tell Mr. Hunt about Ms. Encinias's call to him (Doc. 82-6 at 59:20-23), one could infer from Ms. Encinias's testimony that Mr. Hunt had knowledge that she had reported him to Mr. Salazar prior to the time he allegedly fired her. Not only did Ms. Encinias testify at her deposition that Mr. Hunt made threatening gestures that day, she also testified that Mr. Hunt told her that his boss, Mr. Salazar, "knows everything." (Doc. 90-2 at 152:6-155:11 & 164:9-165:20). Accordingly, this evidence also raises a genuine issue of material fact.

## VI. THE CLAIM FOR FRONT PAY ON BEHALF OF MS. ENCINIAS

Front pay is intended to compensate victims of discrimination for the continuing effects of discrimination until the victims can be made whole. *Pitre v. W. Electric Co.*, 843 F.2d 1262, 1278 (10th Cir. 1988). Determination of front pay requires an individualized analysis of the specific circumstances. *Davoll v. Webb*, 194 F.3d 1116, 1144 (10th Cir. 1999). "Numerous factors are relevant in assessing front pay including work life expectancy, salary and benefits at the time of termination, any potential increase in salary through regular promotions and cost of living adjustment, the reasonable availability of other work opportunities, the period within

which a plaintiff may become re-employed with reasonable efforts, and methods to discount any award to net present value." *Id.* "A court may also consider a plaintiff's future in the position from which he was terminated." *Id.*

Fisher seeks a summary judgment ruling that Ms. Encinias is not entitled to front pay arguing first that Ms. Encinias has not established that she was constructively discharged. However, as noted above, this Court has already found a genuine issue of material fact as to whether Ms. Encinias was terminated. Accordingly, Fisher is not entitled to summary judgment as to the front claim pay on this basis.

Second, Fisher argues that Ms. Encinias is not entitled to front pay because she was hired to work as a flagger on a single job located in the area of Mora, New Mexico and that job ended in early November 2007 and because Ms. Encinias received unemployment until October 2007, when she began working for another employer where she received compensation that roughly equaled what she made while working at Fisher. Fisher argues that any award of front pay would thus result in a windfall to Ms. Encinias. The Court rejects Fisher's argument that it is entitled to summary judgment as to liability for front pay based on these factors alone. While these factors may well limit the amount of front pay to which Ms. Encinias may be entitled, they do not establish as a matter of law that Fisher may not be held liable for front pay. In so holding, the Court notes that there appear to be factual disputes regarding future opportunities that may have existed for Ms. Encinias at Fisher. Even though the Mora job ended and Ms. Encinias understood that she would be laid off once the project ended (Doc. 82-13 (Encinias Depo.) at 246:18-247:11), there is also evidence that employees could be transferred to other Fisher projects in New Mexico or re-employed seasonally in subsequent years at other projects. (Doc. 90-8 (Sena Depo.) at 8:19-9:22 & 10:16-20; Doc. 90-4 (Mesta) at 11:14-12:6; Doc. 90-5

(Olson Depo.) at 89:19-90:4). Further, unemployment compensation is considered a collateral source that does not preclude Plaintiff from pursuing the full amount of losses suffered from Fisher. *EEOC v. Sandia Corp.*, 639 F.2d 600, 624-25 (10th Cir. 1980) ("[U]nemployment compensation is purely a collateral source and is peculiarly the property of the claimant."); *see also EEOC v. Roswell Radio, Inc.*, No. CIV-06-253 JB/LAM, 2007 WL 2305289, at *2 (D.N.M. June 12, 2007) (discussing collateral source rule). Finally, Ms. Encinias's subsequent employment at comparable wages—evidence of mitigation—is relevant in determining the amount of front pay, but does not entitle Fisher to summary judgment as to liability for front pay. Accordingly, the Court will deny Fisher's request that it be granted summary judgment on the basis that Ms. Encinias is not entitled to front pay.

## VII. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Fisher Sand & Gravel Co.'s Motion for Summary Judgment (Doc. 82) is **DENIED**.

**DATED** this 31st day of March, 2011.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**

<u>Attorney for Plaintiff:</u>
    Christina A. Vigil, Esq.
    David Andrew Winston, Esq.
    Gwendolyn Young Reams, Esq.
    James L. Lee, Esq.
    Loretta F. Medina, Esq.
    Mary Jo O'Neill, Esq.
    Sally C. Shanley, Esq.
    Rita Byrnes Kittle, Esq.

<u>Attorneys for Defendant:</u>
    Alex Cameron Walker, Esq.
    Jennifer A. Noya, Esq.