IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

       Plaintiff,                                             No. 1:09-cv-309 MV/WPL

       v.

FISHER SAND & GRAVEL CO. ,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Plaintiff EEOC's Motion for Partial Summary Judgment, filed June 18, 2010. (Doc. 83). The Court, having reviewed the motion, the memoranda and exhibits submitted by the parties, relevant authorities, and being otherwise fully informed, concludes that the motion for summary judgment should be granted in part and denied in part.

**I.    BACKGROUND**

The Equal Employment Opportunity Commission (EEOC) brought this action against Fisher Sand & Gravel Co. (Fisher) alleging sexual harassment and retaliation. In 2007, Melony Encinias and Donna Romero both worked for Fisher as flaggers, controlling traffic in the construction zone at Fisher's job site in Mora, New Mexico. Both allege that while employed by Fisher, they were sexual harassed by Fisher's Traffic Control Supervisor Erwill Hunt. In its complaint (Doc. 1), the EEOC alleges that the charging party, Ms. Encinias, and at least one other female employee of Fisher, Ms. Romero, were subjected to sexual harassment by a supervisory official of Fisher, which created a hostile work environment for them because of

their sex. The complaint also alleges that Ms. Encinias was subject to retaliation because she opposed the supervisor's unwelcome sexual conduct. The EEOC seeks relief on behalf of Ms. Encinias and a class of females.

By the instant motion, the EEOC seeks summary judgment as to four of Fisher's affirmative defenses: (1) the 11th Affirmative Defense, namely that the claim for punitive damages is unconstitutional; (2) the 12th Affirmative Defense, namely that the injunctive relief sought is barred because it constitutes a improper prior restraint of Fisher's First Amendment rights; (3) the 14th Affirmative Defense, namely that the claims are barred, in whole or in part, by the doctrine of unclean hands; and (4) the 15th Affirmative Defense, namely that the compensatory relief sought is barred, in whole or in part, by the doctrine of laches and related equitable principles.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on summary judgment, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." *Zurich N. Am. v. Matrix Serv., Inc.,* 426 F.3d 1281, 1287 (10th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## III. FISHER'S 11TH AFFIRMATIVE DEFENSE

Fisher's 11th Affirmative Defense states: "The claim for punitive damages is unconstitutional under the New Mexico and United States Constitutions because such damages and the manner in which they are determined under New Mexico law violates the due process clause of the Fourteenth Amendment of the United States Constitution and Article II, Section 18,

of the New Mexico Constitution." (Doc. 8 at p. 3). In response to an interrogatory asking Fisher to state the factual basis for its affirmative defense that punitive damages are unconstitutional under the New Mexico and United States Constitution, Fisher answered that "[t]his is a legal defense, not premised on any specific facts other than the fact that the EEOC is seeking punitive damages." (Doc. 84, Ex. D at Interrogatory 22).

In its motion, the EEOC argues that in accordance with the Tenth Circuit's decision in *Deters v. Equifax Credit Information Services, Inc.*, 202 F.3d 1262 (10th Cir. 2000), punitive damages under Title VII do not violate the United States Constitution and that Fisher cannot utilize the State of New Mexico's Constitution to challenge federal law. In response to the EEOC's argument, Fisher does not challenge the *per se* constitutionality of punitive damages and "acknowledges that punitive damages *may be* available under Title VII." (Doc. 89 at p. 4). Rather than challenging the *per se* constitutionality of punitive damages, Fisher instead argues that pursuant to *Kolstad v. American Dental Association*, 527 U.S. 526, 534 (1999), punitive damages may be awarded only when there is a showing that the employer intentionally discriminated with malice or reckless indifference to a plaintiff's federal protected rights. Fisher argues that were punitive damages to be awarded without facts establishing a violation of Title VII and malice and/or reckless indifference, such award would violate Fisher's constitutional rights. Fisher also argues that punitive damages may not be awarded under *Kolstad* based on vicarious liability as the alleged harassment by Mr. Hunt was contrary to Fisher's good-faith efforts to comply with Title VII. Finally, Fisher argues that an award of excessive punitive damages could be unconstitutional.

As Fisher has abandoned the argument that punitive damages are inherently unconstitutional and acknowledges that punitive damages may be available under Title VII, the

3

Court finds that the EEOC is entitled to summary judgment as to Fisher 11th Affirmative Defense, which Fisher has characterized as a "legal defense" not premised on any fact other than that the EEOC is seeking punitive damages.  In so holding, however, the Court expresses no opinion as to whether the EEOC can make the requisite showing pursuant to *Kolstad* to establish that punitive damages are appropriate in this case, as this is beyond the scope of the EEOC's motion.  Thus, Fisher remains free to argue that punitive damages are inappropriate based on the evidence presented at trial or that the amount of punitive damages ultimately awarded, if any, is excessive.

## IV.     FISHER'S 12TH AFFIRMATIVE DEFENSE

Fisher's 12th Affirmative Defense states:  "The injunctive relief sought is barred because it constitutes an improper prior restraint of the First Amendment's free speech guarantees."  (Doc. 8 at p. 4).  In response to an interrogatory asking Fisher to state the factual basis for this affirmative defense, Fisher answered:  "This is a legal defense, not premised on any specific facts.  As a general matter, speech may not be restrained until a final judicial determination that it's unprotected."  (Doc. 84, Ex. D at Interrogatory 23).

The EEOC argues both that Fisher has failed to sufficiently plead this affirmative defense and that there is no legal basis for a prior-restraint defense as injunctive relief would be awarded only after a finding that Fisher had violated Title VII.  In response, Fisher argues that here the EEOC is seeking injunctive relief in the form of an order that requires Fisher to affirmatively "institute and carry out policies, practices and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices, including sex discrimination and retaliation."  (Doc. 1 at p. 4).  Fisher contends that although this "request for injunctive relief is exceedingly vague, any Order that

fetters or dictates Fisher's private speech, or which otherwise conditions Fisher's exercise of speech rights (whether through employee handbooks, policies, or otherwise) on the prior permission of the EEOC or this Court constitutes an impermissible prior restraint." (Doc. 89 at p. 7).

The Court finds that the issue of whether injunctive relief constitutes an impermissible prior restraint on speech is best addressed in the context of a specific injunction, rather than as an abstract hypothetical. At this point, liability has not been decided, and no specific injunction has been proposed. Accordingly, the Court declines to address this issue now and will deny the motion for summary judgment without prejudice. This issue may be raised again if and when a specific injunction is proposed.

## V.    FISHER'S 14TH AFFIRMATIVE DEFENSE

Fisher's 14th Affirmative Defense states: "The claims are barred, in whole or in part, by the doctrine of unclean hands." (Doc. 8 at p. 4). When asked by an interrogatory to state the factual basis for this affirmative defense, Fisher identified six bases for its defense, namely that "[t]he EEOC failed to properly investigate this claim, failed to participate in conciliation in good faith, fought legitimate attempts to depose its investigator, withheld investigative documents that are routinely produced in cases in which the EEOC is not a party, . . . misrepresented the nature and extent of Ms. Encinias' emotional status" and "Ms. Encinias lied on her employment application." (Doc. 84, Ex. D at Interrogatory 24). In opposing the EEOC's summary judgment, however, Fisher relies solely on its allegation that Ms. Encinias lied on her employment application and submits no evidence or argument to support any other alleged basis for its unclean hands defense.

In the course of discovery, it came to light that on her employment application,

Ms. Encinias indicated that she had a GED and a certificate of completion for the Albuquerque Job Corp., but she had no documentary evidence of either qualification. (Doc. 84, Ex. E at 44:6-45:9 & Ex. F). Thus, for purposes of summary judgment, this Court will assume that Ms. Encinias made misrepresentations on her job application. Though it is undisputed that the position for which Ms. Encinias was hired, a flagger, had no educational requirements and did not require a high school diploma or GED, that Fisher employed other flaggers who lacked a high school diploma and GED, and that Fisher conducted no check relating to the contents of Ms. Encinias's employment application prior to hiring her (Doc. 84 at pp. 5-6, fact nos. 21-27; Doc. 89 at p. 1), there is also evidence that as a Fisher job applicant, Ms. Encinias signed a statement acknowledging that "any false or misleading information provided during the application or interview process will result in my immediate discharge if I am hired, regardless of when discovered." (Doc. 89, Ex. K). Fisher's employee handbook also identifies falsification of written records, including the making of false statements on an employment application, as a "serious offense" for which discipline, including termination, may be imposed. (Doc. 89, Ex. L).

In *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 354 (1995), the Supreme Court was confronted with the question of whether an employee discharged in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") "is barred from all relief when, after her discharge, the employer discovers evidence of wrongdoing that, in any event, would have led to the employee's termination on lawful and legitimate grounds." The Court held that such after-acquired evidence is not a bar to liability, noting that the ADEA, like Title VII, is designed both to compensate employees for injuries caused by prohibited discrimination and to deter employers from engaging in such discrimination, but found that such after-acquired evidence of an employee's wrongdoing may be relevant in determining the

specific remedies available.  *Id.* at 357-63; *see also Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 554 (10th Cir.1999) ("Under *McKennon*, information that an employer learns after it has discharged an employee is not relevant to the determination of whether an employer violated Title VII because it necessarily played no role in the actual decision.").  Specifically, the Court in *McKennon* found that as a general rule after-acquired evidence could bar a claim for reinstatement and front pay and could limit backpay to the period between the unlawful discharge and the date such after-acquired evidence is discovered.  *McKennon*, 513 U.S. at 361-62.

"In applying *McKennon*, the district court considers a two-step process."  *Perkins v. Silver Mountain Sports Club & Spa, LLC*, 557 F.3d 1141, 1145 (10th Cir. 2009).  "First, the employer must establish 'that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge.'" *Id.* (quoting *McKennon*, 513 U.S. at 362-63); *see also Ricky v. Mapco, Inc.*, 50 F.3d 874, 876 (10th Cir.1995) (employer must show that the misconduct was "serious enough to justify discharge" and that it would have discharged the employee had it known about the misconduct).  "Second, and only after an employer has met this initial showing, the after-acquired evidence may then be considered to limit the damages remedy available to the wrongfully terminated employee."  *Perkins*, 557 F.3d at 1145.

In seeking summary judgment, the EEOC argues both (1) that Fisher cannot maintain an after-acquired evidence defense as it has not established that the alleged wrongdoing by Ms. Encinias—making false representations on her employment application—was of such severity that Ms. Encinias would have been terminated on those grounds alone if Fisher had known of it at the time of the discharge and (2) that Fisher has not pled an after-acquired

7

evidence defense. As noted above, it is undisputed that the position of flagger did not have any educational requirement, that Fisher did not investigate the contents of Ms. Encinias's employment application prior to hiring her, and that Fisher employed other flaggers that lacked a high school diploma or GED. On the other hand, Fisher has submitted evidence that as a job applicant, Ms. Encinias signed a statement acknowledging that "any false or misleading information provided during the application or interview process will result in my immediate discharge if I am hired, regardless of when discovered." Similarly, Fisher's employee handbook identifies falsification of written records, including the making of false statements on an employment application, as a "serious offense" for which discipline, including termination, may be imposed. Accordingly, the issue is not just one of job qualifications but also one of honesty. While it would have been helpful to the Court to have received evidence on the degree to which Fisher enforces its policy regarding misrepresentations on employment applications, the Court finds that the evidence submitted is sufficient to create a factual dispute as to whether the alleged misrepresentations were of such severity that Ms. Encinias would have been terminated on the basis of the misrepresentations alone.

The EEOC also argues that while Fisher pled an unclean hands affirmative defense, it did not plead an after-acquired evidence affirmative defense and that Fisher is thus precluded from doing so at this stage in the litigation as it would prejudice the EEOC; the EEOC, however, offers no evidence to support its claim of prejudice. Obviously, the two defenses are related in that they both stem from misconduct on the part of the party seeking relief. While Fisher's answer simply pleads that the EEOC's "claims are barred, in whole or in part, by the doctrine of unclean hands" (Doc. 8 at p. 4), in response to an interrogatory asking Fisher to identify the basis for its unclean hands defenses, Fisher explicitly identified the allegation that "Ms. Encinias lied

on her employment application." (Doc. 84, Ex. D at Interrogatory 24).  The EEOC was thus on notice of this basis at least upon receipt of the interrogatory response, which was served in March 2010.  Moreover, the pretrial order, which controls the course of the action, specifically identifies one of the issues to be decided as:  "Whether Plaintiff's claim for back/front pay on behalf of Melony Encinias is barred by Fisher's unclean hands (*i.e.*, after-acquired evidence of Encinias' lies on her employment application) defense." (Doc. 102 at p. 17).  Accordingly, based on the present record, the Court finds that an after-acquired evidence defense is properly before the Court.

Based on the foregoing, the Court denies the EEOC's motion for summary judgment to the extent it seeks summary judgment on Fisher's defense that the EEOC's claim for back/front pay on behalf of Melony Encinias is barred by Fisher's after-acquired evidence of Ms. Encinias's misrepresentations on her employment application.  The Court, however, will grant summary judgment in the EEOC's favor as to all other basis for Fisher's unclean hands defense.  Accordingly, while Fisher may argue that the EEOC's claim for back/front pay on behalf of Melony Encinias is barred by Fisher's after-acquired evidence of Ms. Encinias's misrepresentations on her employment application, it may not assert any other form of unclean hands as an affirmative defense at trial.

## VI.     FISHER'S 15TH AFFIRMATIVE DEFENSE

Fisher's 15th Affirmative Defense states:  "Compensatory relief sought by the EEOC is barred in whole or in part by the doctrine of laches and related equitable principles." (Doc. 8 at p. 4).  Assuming the defense is available in an action such as this, a laches defense consists of two elements:  "(1) inexcusable delay in instituting suit; and (2) resulting prejudice to defendant from such delay."  *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 523 (10th Cir. 1987).

Fisher contends that its laches defense is concerned with two serious and prejudicial delays, namely: (1) the EEOC's failure to identify any class members save for Donna Romero and (2) Ms. Romero's failure to file her own charge with the EEOC.

As the EEOC's inability to identify class members, or its delay in doing so, is distinct from a delay in instituting this suit, the Court finds that this alleged delay is insufficient to support Fisher's laches defense.

As to Ms. Romero's failure to file her own charge with the EEOC, Fisher argues that as any claim now by Ms. Romero would be time-barred, the EEOC is precluded from seeking monetary relief on her behalf. In so arguing, Fisher cites *EEOC v. North Gibson School Corp.*, 266 F.3d 607, 614 n. 7 (7th Cir. 2001), and *EEOC v. Waffle House, Inc.*, 193 F.3d 805, 812-13 (4th Cir. 1999), for the proposition that the EEOC is precluded from seeking monetary relief for individuals who themselves are barred from bringing the same suit. These decisions, however, have been overruled. In *EEOC v. Waffle House, Inc*., 534 U.S. 279, 282-85 (2002), the United States Supreme Court reversed the decision of the Fourth Circuit, which had held that an agreement between an employer and an employee to arbitrate employment-related disputes barred the EEOC from pursuing victim-specific judicial relief, such as backpay, reinstatement, and damages, in an Americans with Disabilities Act enforcement action. In finding that the EEOC could seek victim-specific relief, the Supreme Court found that the EEOC was not bound by the arbitration agreement because the EEOC's enforcement authority is not derivative of the legal rights of individuals even when it is seeking to make them whole. *Id*. at 291-98. Likewise, in *EEOC v. Sidley Austin LLC*, 437 F.3d 695, 696 (7th Cir. 2006), the Seventh Circuit explicitly recognized that *EEOC v. North Gibson School Corp.* was no longer good law in light of the Supreme Court's decision in *EEOC v. Waffle House, Inc.* and held that the EEOC may obtain

monetary relief on behalf of individuals who, having failed to file timely administrative charges under the ADEA, are barred from bringing their own suits.  Accordingly, the Court finds that Ms. Romero's failure to file her own charge with the EEOC does not support a laches affirmative defense.

As Fisher has presented no evidence that the EEOC inexcusably delayed in instigating this lawsuit and no evidence that Fisher was materially prejudiced by any alleged delay on the EEOC's part, the Court finds that the EEOC should be granted summary judgment in its favor as to Fisher's laches defense.

## V.     CONCLUSION

**IT IS THEREFORE ORDERED** that

1. The EEOC is granted summary judgment in its favor as to Fisher's 11th Affirmative Defense, namely, that the claim for punitive damages is unconstitutional under the New Mexico and United States Constitutions.  Such ruling, however, does not preclude Fisher from arguing that punitive damages may not be awarded based on the facts established at trial or that the punitive damages awarded, if any, are excessive.

2. The Court will deny EEOC's request for summary judgment as to Fisher's 12th Affirmative Defense, namely that the injunctive relief sought is barred because it constitutes an improper prior restraint of the First Amendment's free speech guarantees, without prejudice.  This issue may be raised again, if appropriate, if and when a specific injunction is proposed.

3. The Court will deny the EEOC's motion for summary judgment as to Fisher's after-acquired evidence affirmative defense, but will grant the EEOC's motion for

summary judgment as to all other bases for Fisher's unclean hands affirmative defense. Accordingly, while Fisher may argue that the EEOC's claim for back/front pay on behalf of Melony Encinias is barred by Fisher's after-acquired evidence of Ms. Encinias's misrepresentations on her employment application, it may not assert any other form of unclean hands as an affirmative defense at trial.

4. The EEOC is granted summary judgment in its favor as to Fisher's 15th Affirmative Defense, namely, that the claim for compensatory relief sought by the EEOC is barred in whole or in part by the doctrine of laches and related equitable principles.

**DATED** this 31st day of March, 2011.

_____
**MARTHA VAZQUEZ**
**UNITED STATES DISTRICT JUDGE**

Attorney for Plaintiff:
    Christina A. Vigil, Esq.
    David Andrew Winston, Esq.
    Gwendolyn Young Reams, Esq.
    James L. Lee, Esq.
    Loretta F. Medina, Esq.
    Mary Jo O'Neill, Esq.
    Sally C. Shanley, Esq.
    Rita Byrnes Kittle, Esq.

Attorneys for Defendant:
    Alex Cameron Walker, Esq.
    Jennifer A. Noya, Esq.